UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEMAL ADAM,<br><br>                       Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>                      Respondents. | Case No.: 25-CV-3854 JLS (BJW)<br><br>**ORDER (1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>(ECF Nos. 1, 2) |

      Presently before the Court is Petitioner Jemal Adam's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1), and Motion for Temporary Restraining Order ("TRO," ECF No. 2). Also before the Court is Respondents Kristi Noem's (Secretary of the U.S. Department of Homeland Security), Pamela Bondi's (Attorney General of the United States), Todd Lyons's (Acting Director of Immigration Customs Enforcement), Jesus Rocha's (Acting Field Director, San Diego Field Office), and Christopher LaRose's (Senior Warden of Otay Mesa Detention Center) (collectively, "Respondents") Return in Opposition to the Habeas Petition ("Ret.," ECF No. 8), and Petitioner's Traverse ("Traverse," ECF No. 9). *See generally* Docket. For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF

No. 1) and **DENIES AS MOOT** Petitioner's Motion for Temporary Restraining Order (ECF No. 2).

## BACKGROUND

Petitioner, a native of Sudan and citizen of Ethiopia, has been detained by the United States Department of Homeland Security's Immigration and Customs Enforcement division at the Otay Mesa Detention Facility since December 18, 2025. Pet. at 3. In 1984, Petitioner was admitted into the United States as a refugee and was granted asylum and a green card. *Id.* In 2011, Petitioner was arrested twice and released into ICE custody. Ret. at 2. On February 8, 2012, Petitioner was ordered removed to Ethiopia, and Sudan in the alternative, but was granted withholding of removal as to both under INA § 241(b)(3). *Id.* On February 10, 2012, Petitioner was released on an Order of Supervision. *Id.* On March 13, 2012, Petitioner was arrested, not prosecuted, and released into ICE custody. *Id.* at 3. On March 15, 2012, Petitioner was again released on an Order of Supervision. *Id.* Petitioner then "lived free in the community for the next 13 years." Pet. at 3. Petitioner was diagnosed with schizophrenia and bipolar, received treatment, and has since lived a law-abiding life. *Id.* Petitioner attended all his ICE check-ins and did not receive any further convictions. *Id.* On December 18, 2025, Petitioner was re-detained without notice. *Id.* Petitioner now argues that ICE did not comply with 8 C.F.R. § 241 or due process. *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*,

443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## JURISDICTION

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(g). Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents claim that Petitioner's claims necessarily arise from the decision or action by the Attorney General to execute removal orders. Ret. at 8. The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order. Rather, Petitioner is challenging "violations of ICE's mandatory duties under statutes, regulations, and the Constitution." Traverse at 11; *Constantinovici v. Bondi*, No. 25-cv-2405-RBM-AHG, 2025 WL 2898985, at *3 (S.D. Cal. Oct. 10, 2025) ("Petitioner challenges his present detention as unlawful, as well as the Government's authority to re-detain him under the post-removal detention statute without notice and an opportunity to respond. Accordingly, this Court has

jurisdiction to consider Petitioner's claims."). Therefore, § 1252(g) does not strip the Court of jurisdiction. *See, e.g.*, *Phan v. Noem*, No. 25-cv-2422-RBM-MSB, 2025 WL 2898977, at *2–3 (S.D. Cal. Oct. 10, 2025) (finding the Court had jurisdiction in a similar matter); *Sun v. Noem*, No. 25-cv-2433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) (same); *Van Tran v. Noem*, No. 25-cv-2334-JES-MSB, 2025 WL 2770623, at *2 (S.D. Cal. Sept. 29, 2025) (same).

## DISCUSSION

When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for ninety days (90) pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(1). This ninety-day period is referred to as the "removal period." § 1231(a)(1)(A). After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

Once ICE releases a non-citizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal citation omitted). ICE may re-detain a non-citizen released on an Order of Supervision "if,

on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). ICE may also re-detain if the non-citizen "violates any of the conditions of release." § 241.13(i)(1). If ICE chooses to re-detain, the non-citizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after [his] return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). The non-citizen may "submit any evidence or information that [he] believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." *Id.*

Here, Petitioner was ordered removed in 2012 and granted withholding of removal to Ethiopia and Sudan. Pet. at 3. Petitioner was released on an Order of Supervision twice, once on February 8, 2012, and again on March 15, 2012, presumably, because his removal was not foreseeable. Ret. at 2–3; *see Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner was re-detained by ICE agents on December 18, 2025. Pet. at 3. The only notice Petitioner received regarding the reasons for his re-detention was a form revocation letter. Pet. at 8–9; *see also Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"). This notice simply states that the revocation was "based on a review of your official alien file and a determination that there are changed circumstances in your case." *Id.* This plain statement is insufficient to provide notice. *See, e.g.*, *Xayakesone v. Noem*, No. 25-cv-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (finding notice insufficient when it stated that the "decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case"); *Rokhifirooz v. Larose*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (same).

1  Further, while ICE agents did conduct an interview immediately after detaining
2  Petitioner, this interview could not have provided Petitioner with "an opportunity to
3  respond to the reasons for revocation stated in the notification," 8 C.F.R. § 241.13(i)(3),
4  because there was no notification. *See Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11
5  ("Petitioner cannot be expected to 'respond to the reasons for revocation stated in the
6  notification' when the [n]otice does not actually state any reasons for revocation.");
7  *Rasakhamdee v. Noem*, No. 25-cv-2816-RBM-DEB, 2025 WL 3102037, at *4 (S.D. Cal.
8  Nov. 6, 2025) (finding an identically worded written notification insufficient as "ICE's
9  conclusory explanations for revoking [p]etitioner's release did not offer him adequate
10 notice of the basis for the revocation decision such that he could meaningfully respond at
11 the post-detention informal interview") (internal quotation marks and citations omitted).
12 "Petitioner must be told *what* circumstances had changed or *why* there was now a
13 significant likelihood of removal in order to meaningfully respond to the reasons and
14 submit evidence in opposition." *Sarail A. v. Bondi*, ---- F. Supp. 3d ----, 2025 WL 2533673,
15 at *10 (D. Minn. 2025).

16 "Government agencies are required to follow their own regulations." *Hoac v.*
17 *Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025)
18 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)) (finding a
19 likelihood of success where petitioner was not provided an informal interview). "[W]hen
20 ICE fails to follow its own regulations in revoking release, the detention is unlawful, and
21 the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP,
22 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). The Court finds that,
23 in violation of ICE's regulations, the revocation of his supervised release without notice or
24 an informed interview justifies **GRANTING** the Petition. *See, e.g.*, *Hoac*, 2025 WL
25 1993771, at *4 (granting a TRO where ICE failed to follow § 241.13(i)(3) procedures);
26 *Phakeokoth v. Noem*, No. 25-cv-2817 RBM (SBC), 2025 WL 3124341, at *6 (S.D. Cal.
27 Nov. 7, 2025) (same); *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 (same); *Tran*, 2025
28 WL 3005347, at *4 (granting a habeas petition on the same grounds); *Truong*, 2025 WL

2988357, at *6 (same); *Nguyen v. Noem*, No. 25-cv-2792 LL (VET), 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) (same).

Additionally, even if the procedural requirements were met, the Court is not persuaded that Respondents have shown a change in circumstances such that there is now a significant likelihood Petitioner will be removed in the reasonably foreseeable future. First, Petitioner has been subject to a final order of removal since February 8, 2012, and in the last fourteen years, there has been no progress on securing his removal. Traverse at 8.

Second, Respondents failed to secure travel documents, or alleged potential for travel documents, for Petitioner *before* his re-detention. Petitioner was released in 2012 because his removal was not reasonably foreseeable, *id.*, and Respondents present no evidence that this has changed. In fact, Petitioner was found to have a credible fear of returning to Ethiopia and Sudan in 2012 and granted withholding of removal. Pet. at 3. Respondents state that "ICE has worked as expeditiously as possible to locate a third country for resettlement and to effectuate Petitioner's removal to a third country." Ret. at 3. This is insufficient to demonstrate changed circumstances. *See Hoac*, 2025 WL 1993771, at *4 (rejecting the government's argument that ICE's intent to apply for travel documents constituted changed circumstances because they failed to provide "any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around").

Therefore, because Respondents have failed to follow their own regulations in re-detaining Petitioner and have failed to demonstrate that his removal is reasonably foreseeable, the Court **GRANTS** the Petition.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) and **DENIES AS MOOT** Petitioner's Motion for Temporary Restraining Order (ECF No. 2). The Court **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting Order of Supervision. The Court **ORDERS** that Respondents cannot re-detain Petitioner without following the

1 procedures set out in 8 C.F.R. § 241.13(i) and other implementing regulations.  The
2 Parties are **ORDERED** to file a Joint Status Report by January 16, 2026, confirming that
3 Petitioner has been released.  The Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  January 13, 2026

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge